Filed 9/14/21  P. v. Forhan CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073969 |
| v. | (Super.Ct.No. RIF1702723) |
| CARL TIMOTHY FORHAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Exum Law Offices and Darryl L. Exum for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

I. INTRODUCTION

Defendant and appellant Carl Timothy Forhan was convicted by a jury of one count of sodomy of a person under the age of 14 years (Pen. Code,[1] § 269, subd. (a)(3), count 1); one count of aggravated sexual assault of a child under the age of 14 (§ 269, subd. (a)(4), count 2); two counts of oral copulation or sexual penetration of a person 10 years of age or younger (§ 288.7, subds. (a), (b), counts 3, 4); and committing a lewd and lascivious act upon a child under the age of 14 years (§ 288, subd. (a), count 5) arising out of a 2009 incident involving his nephew, A.B.

Additionally, defendant was convicted by a jury of 25 counts of committing a lewd and lascivious act upon a child under the age of 14 years by use of force, violence, duress, menace, and fear (§ 288, subd. (b)(1), counts 6-30) arising out of incidents from 1991 through 1993 involving defendant's younger brother, G.F. Additionally, the jury found true special circumstance allegations that defendant's commission of counts 6 through 30 involved substantial sexual conduct with a child under 14 years of age (§ 1203.066, subd. (a)(8)); defendant committed a qualifying offense against more than one victim (§ 667.61, subd. (e)(4)); and the statute of limitations was tolled (§ 803, subd. (f)(1)).

On appeal, defendant argues (1) the trial court erred in denying a pretrial motion pursuant to section 995 seeking to set aside the information on the ground that all charges were barred by the applicable statute of limitations; (2) the failure of the prosecutor to

---

[1] Undesignated statutory references are to the Penal Code.

require a designated expert on child sexual abuse accommodation syndrome (CSAAS) to prepare a report for the purpose of producing it in pretrial discovery constituted a violation of defendant's due process rights or, alternatively, a violation of his statutory rights to discovery under section 1054.1; (3) the trial court abused its discretion in admitting expert testimony on the subject of CSAAS; (4) the trial court abused its discretion in admitting purported hearsay testimony by a witness; and (5) the trial court abused its discretion in denying his motion for a new trial. We find no merit in defendant's arguments, and we affirm the judgment.

## II. FACTS & PROCEDURAL HISTORY

A. *Facts and Charges*

In January 2015, A.B. disclosed to a mandated reporter that defendant had shown him pornography and had inappropriately touched him during an incident in 2009 when A.B. was only 10 years of age. Following A.B.'s disclosure, defendant's brother, G.F., also came forward and accused defendant of various acts of molestation when G.F. was a teenager. In response, the People filed a felony complaint against defendant on March 6, 2015, followed by an information in December 2015, and an amended information in May 2016.

In July 2017, A.B. alleged for the first time that he was also sodomized during the 2009 incident involving defendant. As a result, on August 3, 2017, the date originally set for trial, the People dismissed and refiled defendant's case under a new case number, with additional allegations and charges.

3

Following a second preliminary hearing, the People filed an information in October 2017. With respect to the allegations made by A.B., defendant was charged with sexual intercourse or sodomy of a person under the age of 14 years (§ 269, subd. (a)(3), count 1); aggravated sexual assault of a child under the age of 14 years (§ 269, subd. (a)(4), count 2); two counts of oral copulation or sexual penetration of a person 10 years of age or younger (§ 288.7, subds. (a), (b), counts 3, 4); and committing a lewd and lascivious act upon a child under the age of 14 years (§ 288, subd. (a), count 5). With respect to the allegations made by G.F., defendant was charged with 25 counts of committing a lewd and lascivious act upon a child under the age of 14 by use of force, violence, duress, menace, and fear. (§ 288, subd. (b)(1), counts 6-30.)

The information further alleged that in the commission of counts 6 through 30, defendant engaged in substantial sexual conduct with a child under 14 years of age (§ 1203.066, subd. (a)(8)); he committed a qualifying offense against more than one victim (§ 667.61, subd. (e)(4)); and the statute of limitations was tolled (§ 803, subd. (f)(1)).

B. *Defendant's Motion To Set Aside the Information*

Prior to trial, defendant filed a motion seeking to set aside the information pursuant to section 995 on the ground that prosecution on all of the charges was barred by the applicable statute of limitations. Specifically, defendant argued that the applicable statute of limitations for all of the charged offenses was six years under section 800, and the testimony presented during his preliminary hearing was not sufficient to show the application of any extension of time for prosecution. Alternatively, defendant requested

4

the trial court exercise its discretion to hold an evidentiary hearing on the sufficiency of the evidence on the statute of limitations issue. The trial court denied the motion without conducting any additional evidentiary hearing.

C. *Relevant Evidence at Trial*

### 1. Testimony of A.B.

A.B. was 20 years old at the time of trial and is defendant's nephew.[2] A.B. testified that in 2009, while he and his brother were visiting defendant's home, defendant took A.B. to a shed in the backyard, showed A.B. pornography, and performed various sexual acts on A.B. Eventually, defendant laid A.B. across a stool, duct taped A.B.'s hands to the legs of the stool, inserted his penis into A.B.'s anus, and proceeded to engage in intercourse with A.B.

In January 2015, A.B. disclosed to his high school girlfriend that he had been abused by defendant. He then spoke with his girlfriend's father, N.W.,[3] about the 2009 incident. However, A.B. did not tell N.W. the full extent of what defendant had done out of fear and embarrassment.

In July 2017, A.B. composed an electronic note on his mobile phone, detailing the 2009 incident with defendant. He initially did so as a coping mechanism. However, after mistakenly forming the belief that his note had been uploaded to his family's electronic storage and read by his mother, A.B. shared the note with his uncle, G.F. This was the

---

[2] Defendant has three siblings, C.B., G.F., and E.N. A.B. is the son of C.B.

[3] N.W. testified he was a law enforcement officer and a mandated reporter at the time.

5

first time A.B. ever disclosed the full extent of what occurred during the 2009 incident. Following this disclosure, G.F. and A.B.'s mother, C.B., accompanied A.B. to a police station where A.B. spoke with an investigator.

On cross-examination, defense counsel questioned A.B. regarding A.B.'s failure to disclose the allegations against defendant in the years following the incident; seemingly inconsistent statements made by A.B. to police in prior interviews; and subsequent events where A.B. appeared to interact normally with defendant.

2. Testimony of G.F.

G.F. was 39 years old at the time of trial, and he is defendant's younger brother. Defendant is approximately four and one-half years older than G.F. G.F. testified that, starting when he was approximately 10 or 11 years of age, defendant began forcing G.F. to masturbate defendant. This occurred frequently until G.F. was approximately 15 years old and moved out of the bedroom he shared with defendant. In 2009, when G.F. was about 30 years old, he disclosed some of what defendant had done to a family member. He did not discuss the matter with anyone else until after A.B. came forward with allegations of abuse against defendant.

On cross-examination, defense counsel elicited testimony that G.F. continued to interact with defendant as an adult despite G.F.'s allegations that defendant abused him as a teenager. G.F. was also asked whether he recalled conversations among his siblings regarding money or their inheritance.

6

### 3. Testimony of Other Witnesses

The People offered the testimony of N.W., who stated he is employed as a police officer, but was not directly involved with any investigation in this case in an official capacity. Due to his profession, N.W. is a mandated reporter and is required to report any instances of child abuse of which he becomes aware. N.W. first came to know A.B. sometime in 2015 when A.B. was dating N.W.'s daughter. He recalled that sometime in 2015, A.B. confided in him that A.B. had been abused by defendant in 2009. At the time, A.B. stated defendant had shown him pornographic magazines and reached into A.B.'s pants to touch A.B.'s penis. Following A.B.'s disclosure, N.W. contacted A.B.'s mother, as well as law enforcement authorities in Riverside, to report the allegations.

The People also called C.B. as a witness. C.B. is the mother of A.B., and she is the sister of defendant and G.F. She recalled that sometime in 2011, A.B. disclosed that defendant had shown A.B. pornography. She then recalled that in 2015, A.B. disclosed additional details regarding his interaction with defendant. C.B. testified that her knowledge of the additional allegations initially came from the parents of A.B.'s girlfriend. C.B. was not asked to disclose the substantive details of this conversation with the parents of A.B.'s girlfriend. C.B. testified she followed up with A.B. directly, who disclosed he was molested by, and forced to touch, defendant.

Finally, the People offered the testimony of E.N., who testified she was defendant's younger sister, and defendant had inappropriately touched her when she was a child.

4. Testimony of CSAAS Expert

The People called a licensed psychologist to testify as an expert on CSAAS. The expert explained that CSAAS is not a diagnostic tool for determining whether a child has in fact been abused, and she further explained that she was not testifying to offer an opinion about whether any specific witness was telling the truth. Instead, she was only offering testimony to explain the different types of disclosure and disclosure patterns that can occur in persons who have been sexually abused as children. The expert emphasized that she reviewed no information specific to the case, had no opinions specific to the case, and did not prepare any reports.

The expert opined that it is common for child victims of sexual abuse to delay reporting for many years until prompted by some other, unrelated event. She testified that it is common for disclosure to occur in a "process," where details of abuse are disclosed over time because child victims may not realize they were abused until they become older and understand the terms. She further testified it is common for child victims to disclose information in a piecemeal manner because they are afraid how any disclosure may be received by those around them, and research suggests that victims are less likely to disclose full details in a police interview setting.

The expert further opined there are often differences in reporting by children who have been abused by family members versus by strangers. Children who are molested by someone that they know may not report it because they feel a great deal of affection for the perpetrator, may not realize at the time that the actions of the perpetrator are inappropriate, may be worried about the impact of disclosure on others around them, or

8

may assimilate to the behaviors and participate as a means of bonding with the perpetrator.

Defendant's own CSAAS expert was present for the testimony offered by the People's expert. However, defendant ultimately did not call his expert because the expert concluded he was in agreement with the testimony already offered.

D. *Verdict, Motion for New Trial, and Sentencing*

The jury found defendant guilty on all counts. Additionally, the jury found true the special allegations that defendant committed a qualifying offense against more than one victim in violation of section 667.61, subdivision (e)(4). Finally, with respect to counts 6 through 30, the jury found true the allegations that the commission of these offenses involved substantial sexual conduct, and that the prosecution for these offenses commenced within the appropriate time under section 803, subdivision (f)(1).

Following the jury's verdict, defendant moved for a new trial on the sole ground that the trial court committed an error of law when it limited the testimony of a defense witness. The trial court denied the motion and proceeded to sentence defendant to a term of 460 years to life in state prison.[4]

---

[4] Specifically, defendant was sentenced to 25 years to life for the oral copulation or sexual penetration of A.B. (§ 288.7, subd. (a), count 3) and consecutive terms of 15 years to life for each of the remaining counts arising out of the incident with A.B. (count 1, § 269, subd. (a)(3); count 2, § 269, subd. (a)(4); count 4, § 288.7, subd. (b); and count 5, § 288, subd. (a)). Additionally, defendant was sentenced to consecutive 15-year-to-life terms for each of counts 6 through 30. (§§ 288, subd. (b)(1), 667.61, subd. (b).) Defendant has not claimed any error with respect to his sentence on appeal.

III.  DISCUSSION

A. *We Find No Error in the Trial Court's Denial of Defendant's Section 995 Motion*

Defendant claims the trial court erred in denying his pretrial motion seeking to set aside the information on the basis that the prosecution of all the charges was barred by the applicable statute of limitations.  Specifically, defendant argues that all of the charged offenses are subject to a six-year statute of limitations pursuant to section 800,[5] and the preliminary hearing evidence was insufficient to support any extension of the statute of limitations under section 803, subdivision (f).  We disagree.

1.  Legal Principles and Standard of Review

" 'To prevail on a section 995 motion to set aside an information, the defendant must establish that he was "committed without reasonable or probable cause."  [Citation.] . . .  "An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.  [Citations.]"  [Citation.]  "[T]he showing required at a preliminary hearing is exceedingly low." ' "  (*Zemek v. Superior Court* (2020) 44 Cal.App.5th 535, 544.)  With respect to the statute of limitations, " 'the People bear the burden of producing evidence . . . which demonstrates that there is probable cause to believe that the prosecution is not barred by the statute of limitations' " and "the evidentiary foundation for the indictment or information must include some evidence that

---

[5]  Section 800 provides:  "Except as provided in section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more . . . shall be commenced within six years after commission of the offense."  (§ 800.)

the prosecution is not barred by limitations." (*People v. Fine* (1997) 52 Cal.App.4th 1258, 1263.)

"When reviewing the denial of a section 995 motion, we disregard the ruling of the superior court and directly review the decision of the magistrate holding the defendant to answer." (*Munoz v. Superior Court* (2020) 45 Cal.App.5th 774, 779.) The parties' arguments on the motion and the reasoning of the trial court are "almost entirely irrelevant" and "[w]e instead review the determination of the *magistrate* holding the defendant to answer based on the evidence adduced at the preliminary hearing." (*People v. Garcia* (2018) 29 Cal.App.5th 864, 872.) "Our review is de novo insofar as the ruling rests on issues of statutory interpretation; to the extent it rests on a consideration of the evidence adduced, we draw all inferences in favor of the information." (*Munoz v. Superior Court*, at p. 779.)

2. Preliminary Hearing Testimony

Here, the preliminary hearing involved a single witness who testified he was a senior investigator with the Riverside County District Attorney's Office. The investigator testified that he conducted an interview with A.B. in July 2017. During this interview, A.B. reported he was born in 1998. A.B. further reported that when he was about 10 years of age, defendant took him into a shed, showed A.B. pornography, engaged in mutual masturbation with A.B., forced A.B. to orally copulate him, and then forcibly sodomized A.B. The investigator stated that this interview was the first time A.B. reported allegations of oral copulation and forced sodomy to law enforcement.

The investigator also stated he spoke with G.F. for the purpose of testifying for the preliminary hearing.  G.F. reported he was born in 1979 and identified defendant as his older brother.  G.F. told the investigator that when G.F. was between the ages of 11 and 14, defendant would force G.F. to masturbate him repeatedly.  The investigator estimated the time frame of this alleged abuse to be between the years 1991 and 1994.  According to the investigator, G.F. first reported these allegations to law enforcement in February 2015.

Finally, the People requested the magistrate take judicial notice of the prior complaint and information filed against defendant in 2015, as well as the dismissal and refiling of the case to include new charges in August 2017.

3.  The Preliminary Hearing Testimony Included Sufficient Evidence to Suggest Defendant's Prosecution Was Not Barred by the Applicable Statutes of Limitation

a.  *Section 800 does not apply to offenses involving A.B.*

Initially, we note that none of the offenses involving A.B. is subject to the limitations period provided in section 800.  By its very terms, section 800 does not apply to offenses subject to section 799.  (§ 800.)  In turn, section 799 provides that prosecution for any offense punishable by death or life imprisonment may commence at any time and is not subject to a statute of limitations.  (§ 799.)  As the People correctly note, counts 1

12

through 4 are punishable by life terms in prison.[6] Thus, prosecution of these offenses may be commenced at any time, and the trial court did not err in denying defendant's motion as to these counts.

Count 5 of the information alleged a violation of section 288, subdivision (a), committed in 2008 or 2009 against A.B., who was under the age of 14 years at the time. At the time of this alleged offense, former section 801.1, subdivision (a), provided that a violation of section 288 could be prosecuted at any time until the victim's 28th birthday if the offense was alleged to have been committed when the victim was under the age of 18 years. (Former § 801.1, subd. (a); Stats. 2005, ch. 479, § 2.)[7] The preliminary hearing testimony indicated A.B. was born in 1998 and, as such, A.B. was well under 28 years of age at the time of the preliminary hearing, the filing of the information, and trial. Thus, contrary to defendant's argument on appeal, the applicable statute of limitations for count 5 has never run; the People were not required to rely on the provisions of section 803, subdivision (f), to extend the statute of limitations period in order to prosecute this offense; and the trial court did not err in denying the motion as to this count.

---

[6] Count 1 alleged a violation of section 269, subdivision (a)(3), which is punishable by a prison term of 15 years to life; count 2 alleged a violation of section 269, subdivision (a)(4), which is punishable by a prison term of 15 years to life; count 3 alleged a violation of section 288.7, subdivisions (a), which is punishable by a prison term of 25 years to life; and count 4 alleged a violation of section 288.7, subdivision (b), which is punishable by a prison term of 15 years to life.

[7] A subsequent amendment to this statute further extended the time for prosecution until the victim's 40th birthday. (Former § 801.1, as enacted by Stats. 2014, ch. 921, § 1.)

b. *Counts 6 through 30 were timely*

With respect to counts 6 through 30, each count charged defendant with a violation of section 288, subdivision (b)(1), arising out of events beginning in 1991 and lasting through 1993.  Generally, violations of section 288, subdivision (b), are punishable by terms of three, six, or eight years in state prison (§ 288, subd. (b)(1)) and thus subject to the six-year limitations period in section 800.[8]  However, prosecution was not barred in this case for two, independent reasons.

First, the information alleged the commission of these offenses occurred under special circumstances set forth in section 667.61.[9]  "Section 667.61 sets forth an alternative, harsher sentencing scheme for certain forcible sex crimes" (*People v. Mancebo* (2002) 27 Cal.4th 735, 738), and it provides an alternative penalty of 15 years to life when a defendant is convicted of a qualifying offense against more than one victim (§ 667.61, subds. (b), (e)(4)).  Such alternate penalty provisions are not enhancements and, instead, " 'set[] forth an *alternate* penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the conditions specified in the statute.' " (*People v. Jones* (2009) 47 Cal.4th 566, 576.)  For the purpose of determining which statute of limitations applies to an offense, "an alternate penalty scheme . . . , when

---

[8]  The maximum punishment prescribed by statute for any given offense is used for the purpose of determining the statute of limitations, excluding any enhancements. (§ 805, subd. (a).)

[9]  A violation of section 288, subdivision (b), has been subject to this alternative penalty since the initial introduction of section 667.61.  (Former § 667.61; Stats. 1994, ch. 14, § 1.)  Section 288, subdivision (b), remains among the offenses subject to an alternative penalty to this day.  (§ 667.61, subd. (c)(4).)

14

charged, defines the length of imprisonment for the substantive offense." (*People v. Perez* (2010) 182 Cal.App.4th 231, 239 [holding that prosecution for violation of § 288 can be commenced at any time under § 799 where special circumstances under § 667.61 are also charged].)  Thus, because counts 6 through 30 were each subject to an alternate penalty carrying a potential term of life imprisonment, prosecution for these offenses was not subject to any statute of limitations.

Second, even in the absence of the special circumstance allegation, the preliminary hearing testimony would have been sufficient to support a finding that the statute of limitations was extended pursuant to section 803, subdivision (f).[10]  Section 803, subdivision (f), extends the time for prosecution of certain sex offenses to one year after

_____

[10] Defendant briefly mentions ex post facto principles in his opening brief without further developing the argument.  We consider such principles inapplicable to this case. The offenses underlying counts 6 through 30 were alleged to have occurred in the years 1991, 1992, and 1993.  At the time of the commission, these offenses would have been subject to a six-year statute of limitations pursuant to section 800.  However, before the expiration of this limitations period, the Legislature enacted former section 803, subdivision (g), which provided an alternative statute of limitations permitting prosecution of these offenses within one year of a victim's report to law enforcement. (*People v. Renderos* (2003) 114 Cal.App.4th 961, 964; former § 803, subd. (g); Stats. 1993, ch. 390, § 1.)  The provisions contained within former section 803, subdivision (g), were rewritten as subdivision (f) in 2005.  (*People v. Linder* (2006) 139 Cal.App.4th 75, 78, fn. 2; Stats. 2005, ch. 479, § 3.)  Since none of the offenses alleged in counts 6 through 30 was time barred at the time the Legislature enacted the extension statute now found in section 803, subdivision (f), the statute operates as a permissible extension of the statute of limitations for prosecution of these offenses without violating ex post facto principles.  (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1272-1273 ["While a 'law enacted after expiration of a previously applicable limitations period violates the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution,' ' "where a right to acquittal has not been absolutely acquired by the completion of the period of limitation, that period is subject to enlargement or repeal without being obnoxious to the constitutional prohibition against *ex post facto* laws." ' "].)

the date of a report to law enforcement if the statute of limitations has otherwise run, the crime involved substantial sexual conduct, and there is independent evidence that corroborates the victim's allegations. (§ 803, subd. (f)(2).)

On appeal, defendant argues that the preliminary hearing evidence in this case did not contain independent evidence to corroborate G.F.'s allegations as required to extend the statute of limitations under section 803, subdivision (f). However, multiple Courts of Appeal have concluded that evidence of sexual misconduct against a different victim can be relied upon to corroborate a victim's allegation of sexual abuse for the purposes of section 803, subdivision (f). (See *People v. Yovanov* (1999) 69 Cal.App.4th 392, 403 [Evidence of uncharged misconduct with another person can be used to corroborate a victim's allegation of sexual abuse under former § 803, subd. (g).]; *People v. Mabini* (2001) 92 Cal.App.4th 654, 659 [Evidence of defendant's sexual misconduct against an uncharged victim, standing alone, may constitute independent evidence that clearly and convincingly corroborates the victim's allegations.]; *People v. Zandrino* (2002) 100 Cal.App.4th 74, 85 [same].)

Here, the preliminary hearing testimony indicated that two separate victims accused defendant of committing acts of sexual molestation. Thus, contrary to defendant's argument, evidence of allegations made by A.B. constitutes independent evidence to corroborate the allegations made by G.F. This evidence was sufficient to satisfy the exceedingly low standard applied at the preliminary hearing stage of the proceedings. The preliminary hearing testimony set forth that G.F. first reported his allegations to law enforcement in February 2015. Thus, the preliminary hearing

16

testimony was sufficient to show the original information filed against defendant was timely pursuant to an extension of the statute of limitations under section 803, subdivision (f),[11] and the trial court did not err in denying defendant's motion.

B. *Admission of CSAAS Expert Testimony*

Defendant also argues on appeal that admission of expert testimony on CSAAS requires reversal because (1) the failure to provide defense counsel with a report of the expert's anticipated testimony violated defendant's constitutional due process rights; (2) the failure to provide defense counsel with a report of the expert's anticipated testimony violated the pretrial discovery requirements of section 1054.1; and (3) the testimony was otherwise inadmissible. We find no merit in any of these arguments.

1. Defendant Has Failed To Show a Due Process Violation

Defendant argues that the prosecutor's failure to provide a report of the anticipated testimony of the People's expert on CSAAS denied him due process because he has a "right to whatever evidence would be presented against him at trial, before it is actually presented at trial." This is an incorrect statement of the law.

" 'A criminal defendant does not have a general constitutional right to discovery.' " (*Jones v. Superior Court* (2004) 115 Cal.App.4th 48, 62; see *People v.*

---

**11** We acknowledge that the original complaint was dismissed, and a new complaint was filed on the same day in August 2017. However, the new complaint was filed following additional allegations made by A.B. With respect to the charged conduct as to G.F., this did not impact the timeliness of any prosecution, since any applicable limitations period was tolled for "[t]he time during which prosecution of the same person for the same conduct is pending." (§ 803, subd. (b).) While defendant's trial counsel initially made some argument with respect to the proper application of this tolling provision at the preliminary hearing, defendant did not renew this argument on appeal.

17

*Williams* (2013) 58 Cal.4th 197, 259.)  Instead, under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*), due process requires prosecutors to disclose exculpatory material evidence.  (*Id.* at p. 87.)  " '*Brady* exculpatory evidence is the only substantive discovery mandated by the United States Constitution.' "  (*Jones v. Superior Court*, at p. 62.)

Additionally, the prosecutor's duty to disclose exculpatory evidence extends only to evidence that "is 'both favorable to the defendant and material on either guilt or punishment.' "  (*People . Earp* (1999) 20 Cal.4th 826, 866.)  In this context, "[f]avorable evidence is evidence that the defense could use either to impeach the state's witnesses or to exculpate the accused."  (*People v. Ayala* (2000) 23 Cal.4th 225, 279.)  Evidence is " 'material, and constitutional error results from its suppression . . . , "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ' "  (*Ibid.*)

As a threshold matter, we note that the People's CSAAS expert testified at trial. As explained by the California Supreme Court, "*Brady* and its progeny serve 'to restrict the prosecution's ability to suppress evidence rather than to provide the accused a right to criminal discovery,' " and "evidence that is presented at trial is not considered suppressed, regardless of whether or not it had previously been disclosed during discovery."  (*People v. Morrison* (2004) 34 Cal.4th 698, 715.)  Thus, the fact that the CSAAS expert testified at trial alone renders defendant's constitutional challenge without merit.

Moreover, even if we were to assume that the prosecution's due process obligations under *Brady* apply here, defendant has failed to show that the evidence at

issue was favorable or material, such that disclosure was required. First, the purpose of CSAAS testimony is to rehabilitate the victim's testimony. (See *People v. Julian* (2019) 34 Cal.App.5th 878, 885.) Such evidence is not "favorable" for purposes of assessing whether due process requires disclosure. (See *People v. Verdugo* (2010) 50 Cal.4th 263, 289 [An opinion that bolsters the prosecution's claim is not one that is favorable to the defense.].)

Second, the record suggests that defendant had his own CSAAS expert present to evaluate the testimony offered by the People's expert and that, ultimately, defendant's expert did not testify because he agreed with the opinions already offered. Thus, defendant has not established the allegedly withheld evidence was material by showing a reasonable probability that the results of the trial would have been different had the prosecution provided a pretrial report from the expert in advance. Having failed to establish that a pretrial report by the People's CSAAS expert would have been favorable or material, defendant has not shown a due process violation warranting reversal.[12]

---

[12] At oral argument, defendant also suggested that he was not given sufficient time to prepare for cross-examination of the expert's testimony. However, there was no objection based upon an untimely disclosure in the trial court proceedings, and this argument was not presented in defendant's written appellate briefs. More importantly, it was undisputed that the prosecution notified defense counsel of the intent to call a CSAAS expert and provided the identifying information for its anticipated expert to defense counsel about 11 months prior to trial. Accordingly, even if this issue had been properly preserved and presented on appeal, we would find no merit in defendant's argument.

2.  The Trial Court Did Not Abuse Its Discretion in Admitting the Evidence Over Defendant's Discovery Objections

We likewise reject defendant's argument that the prosecutor had an obligation to request a report be prepared in anticipation of trial in order to satisfy the statutory requirements of section 1054.1.

"Section 1054.1 (the reciprocal-discovery statute) 'independently requires the prosecution to disclose to the defense, . . . certain categories of evidence " 'in the possession of the prosecuting attorney or [known by] the prosecuting attorney . . . to be in the possession of the investigating agencies.' " ' " (*People v. Verdugo*, *supra*, 50 Cal.4th at pp. 279-180.)  This provision creates a statutory duty of disclosure separate from the constitutional duty imposed under *Brady*.  (*People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1314.)  A trial court's order under the reciprocal discovery statute is reviewed for abuse of discretion.  (*People v. Williams* (2013) 58 Cal.4th 197, 262.)

As relevant here, section 1054.1 requires a prosecutor to disclose the names and addresses of persons the prosecutor intends to call as witnesses (§ 1054.1, subd. (a)) and any written reports or recorded statements of such persons (§ 1054.1, subd. (f)).  However, it is undisputed that the People's CSAAS expert did not prepare a written report.  Thus, there was no written report to produce.

Defendant argues that in the absence of a report, section 1054.1 should be read to require the prosecutor to request such a report be prepared for the purpose of discovery.  Defendant has cited no authority for such an expansive interpretation of the statute.  Nor do we believe such an interpretation is appropriate.  As our Supreme Court has explained,

20

"Section 1054, subdivision (e), precludes [courts] from broadening the scope of discovery beyond that provided in the chapter or other express statutory provisions, or as mandated by the federal Constitution.  Thus, if none of those authorities requires disclosure of a particular item of evidence, [courts] are not at liberty to create a rule imposing such a duty."  (*People v. Tillis* (1998) 18 Cal.4th 284, 294.)  Neither this court nor the trial court are at liberty to create an affirmative discovery obligation that is not imposed by section 1054 et seq., such as requiring the prosecutor to create evidence (i.e., a report or recorded statement) that does not otherwise exist.  Thus, we find no abuse of discretion with respect to the trial court's ruling on this issue.

     3.  <u>The Trial Court Did Not Abuse Its Discretion in Admitting Expert Testimony on CSAAS</u>

Finally, defendant argues admission of CSAAS testimony was erroneous because such evidence is inadmissible for the purpose of proving that a victim was in fact abused. This argument misconstrues the record and the purpose for which CSAAS evidence was offered in this case.

"Expert testimony on 'the common reactions of child molestation victims,' known as CSAAS theory evidence, 'is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation.' " (*People v. Julian*, *supra*, 34 Cal.App.5th at p. 885; see *People v. Munch* (2020) 52 Cal.App.5th 464, 468.)  " 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of

21

abused children's seemingly self-impeaching behavior. [¶] The great majority of courts approve such expert rebuttal testimony.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1301.)

Additionally, such evidence may be "introduced as part of the prosecution's case-in-chief rather than in rebuttal [and] [t]he testimony is pertinent and admissible if an issue has been raised as to the victim's credibility." (*People v. Patino* (1994) 26 Cal.App.4th 1737, 1745.) "We apply an abuse of discretion standard in reviewing a trial court's decision to admit the testimony of an expert." (*People v. Prince* (2007) 40 Cal.4th 1179, 1222.)

Here, the CSAAS testimony was presented at the end of the People's case-in-chief, after A.B. and G.F. had already testified and had been subjected to cross-examination questioning their credibility. Further, the expert made clear that CSAAS is not a tool to be used to determine whether abuse has occurred, and that she had no opinions specific to defendant's case. Thus, the scope of CSAAS testimony and the actual presentation of CSAAS testimony here were consistent with the limited use of CSAAS evidence permitted by existing California case law. Defendant has not directed us to anything in the record to suggest that the evidence was used for a purpose other than the rehabilitation of A.B. and G.F.'s testimony after it was challenged. We find no abuse of discretion in the trial court's decision to permit such evidence to be presented to the jury.

C. *Any Hearsay Testimony by C.B. Was Not Prejudicial*

Defendant also argues the trial court erred in permitting C.B. to relay hearsay statements as part of her testimony. We find no error and no prejudice warranting reversal.

"[A] hearsay statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true." (*People v. Sanchez* (2016) 63 Cal.4th 665, 674.) Generally, such evidence is inadmissible absent a recognized exception. (Evid. Code, § 1200.) However, "a statement 'offered for some purpose other than to prove the fact stated therein is not hearsay.' " (*People v. Sanchez*, at p. 674.) "The standard of review for the court's ruling, along with its determination of issues concerning the hearsay rule, is abuse of discretion." (*People v. Clark* (2016) 63 Cal.4th 522, 590.)

Here, the challenged testimony consists of a question in which the prosecutor asked C.B. when she learned of additional information regarding A.B.'s allegations of abuse in 2015 and C.B.'s response, indicating she learned additional information from the parents of A.B.'s girlfriend at the time. However, C.B. was never asked to disclose any statements made by the parents of A.B.'s girlfriend during this conversation. On its face, this testimony is not hearsay. C.B. did not relay any out-of-court statements made by A.B., A.B.'s girlfriend, or the parents of A.B.'s girlfriend in this response.

Additionally, the record discloses a clear nonhearsay purpose for eliciting this testimony from C.B. Defendant placed the statute of limitations at issue. Because the 2015 incident involving the parents of A.B.'s girlfriend led to a mandated report to law

23

enforcement, the prosecution was entitled to ask witnesses with personal knowledge of this event, such as C.B., when this event occurred.  We, therefore, find no error in the trial court's decision to admit this testimony.

Even if C.B. had been asked to relay the statements made to her by A.B.'s parents—which she was not—admission of such testimony could not have been prejudicial.  Generally, a defendant is not prejudiced by the erroneous admission of hearsay testimony that is entirely duplicative of substantive testimony already given by other witnesses.  (See *People v. Kopatz* (2015) 61 Cal.4th 62, 86-87 [erroneous admission of wife's testimony regarding husband's statements not prejudicial where "entirely duplicative" of husband's testimony]; *People v. Flint* (2018) 22 Cal.App.5th 983, 1004 [expert's recitation of case-specific hearsay testimony not prejudicial where it "merely duplicated other testimony to which [defendant] did not object"].)  Here, A.B. testified regarding his report of abuse to N.W., and N.W. also testified regarding his conversation with both A.B. and C.B.  Defendant did not object to this testimony and does not claim that such testimony was inadmissible on appeal.  As such, even if C.B. had testified to the statements made by N.W. regarding A.B.'s report of abuse, it could not have prejudiced defendant, as it would have been wholly duplicative of testimony already offered by A.B. and N.W.

D. *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Motion for New Trial*

Finally, defendant argues the trial court abused its discretion in denying his motion for a new trial.  Defendant moved for a new trial on the sole ground that the trial court

committed an error of law warranting a new trial under section 1181, subdivision (5). Specifically, defendant contends the trial court erred by limiting the testimony of defense witness J.R., who was purportedly prepared to testify that G.F., C.B., and E.N. previously made comments suggesting they had a racial or financial motive to fabricate their testimony against defendant. We conclude plaintiff has not shown the trial court's underlying evidentiary ruling was erroneous and, as a result, defendant has not established that the trial court abused its discretion in denying the motion for a new trial.

1. General Legal Principles and Standard of Review

A criminal defendant may move for a new trial "[w]hen the court . . . has erred in the decision of any question of law arising during the course of the trial." (§ 1181, subd. (5).)

With respect to the evidentiary ruling challenged by defendant on appeal, "[e]vidence concerning the alleged existence of a witness' motive to fabricate testimony is admissible to attack his credibility. . . . [This] does not require that all questions relating to a witness' credibility be allowed on cross-examination; nor does it mandate the admission of all evidence offered to show a motive to fabricate." (*People v. Johnson* (1984) 159 Cal.App.3d 163, 168.) Such evidence "must *unequivocally* point to a possible motive to fabricate testimony before it is admissible . . . [and] evidence of such a motive need not be admitted where the theory behind the alleged motive to fabricate is highly tenuous, speculative, conjectural or based on 'possibilities.' " (*Ibid.*)

Even where such evidence may have some probative value, our Supreme Court has explained that a trial court does not abuse its discretion in excluding such evidence

25

where its probative value is "substantially outweighed by the probability that its admission would necessitate undue consumption of time or create substantial danger of undue prejudice or of confusing the issues" (*People v. Avila* (2006) 38 Cal.4th 491, 584) or the evidence is "of attenuated significance to the issues contested at trial . . . [and] would have permitted the focus of the testimony to shift away from the events leading to and involving the charged offenses." (*People v. Hart* (1999) 20 Cal.4th 546, 607.)

" 'We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard.' [Citations.] ' "A trial court's ruling on a motion for new trial is so completely within that court's discretion that a reviewing court will not disturb the ruling absent a manifest and unmistakable abuse of that discretion." ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 140.)

2. Application

Here, defendant sought to introduce testimony from his girlfriend, J.R., who was purportedly preparing to testify that she participated in a phone call in which G.F., C.B., and E.N. made disparaging racial comments about the fact that defendant was dating J.R., and comments suggesting they wanted to see defendant cut off from their anticipated

26

shared inheritance.[13]  Ultimately, the trial court excluded any testimony regarding racially disparaging comments, permitted defense counsel to recall G.F. to be questioned regarding any financial matters discussed on the phone call with J.R., and reserved ruling on whether J.R. should be allowed to testify further to impeach any testimony by G.F. on that topic.

We find no error in the trial court's evidentiary rulings with respect to J.R.'s testimony.  While the anticipated testimony suggested G.F., C.B., and E.N. held animosity toward the defendant, none of the anticipated testimony unequivocally pointed to a motive to fabricate testimony.  Moreover, even if true, evidence that these witnesses previously made racially disparaging comments had little relevance to the contested issues in this case, clearly had the potential to be highly inflammatory, and risked diverting the jury's focus from the events and facts surrounding the actual charges at issue.  Finally, the trial court offered defendant an alternative means to introduce evidence of a motive to fabricate testimony by permitting defendant to recall G.F. to be cross-examined on that issue and by reserving ruling on any potential impeachment testimony by J.R. following G.F.'s further testimony.

---

**13**  Specifically, defense counsel's offer of proof was that J.R. would testify that she heard them "calling my client petty, that he left his beautiful wife for a wetback because it was the only thing he could get, and he should be ashamed to walk side by side with a spick like her, and a litter of spicks and a nigger.  And they would love to see a family gathering because all his family would show up with leaf blowers . . . ."  Although such a statement, if made, would be highly offensive, it does not unequivocally point to a motive to fabricate child abuse accusations.  Such a connection is highly speculative. J.R. would further testify that she heard C.B. say "that she wanted to make sure [defendant] did not get any of their mother's and grandmother's money and further went on to say that she was going to find a way to drain their bank accounts."

27

Thus, defendant has not shown an abuse of discretion with respect to the trial court's ruling on these evidentiary issues.  Absent such, defendant has not established an error of law warranting a new trial under section 118, subdivision (5), and we find no abuse of discretion in the trial court's denial of defendant's motion for new trial.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____
                                                                                    J.

We concur:


MILLER _____
              Acting P. J.


SLOUGH _____
                              J.

28